# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JACOB AIKPITANHI, et al.,

                Plaintiffs,                CASE NO. 07-CV-14468

-vs-                                                  PAUL D. BORMAN
                                                    UNITED STATES DISTRICT JUDGE

IBERIA AIRLINES OF SPAIN,

                Defendant.
_____/

## OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS AND (2) DENYING AS MOOT PLAINTIFFS' MOTION FOR SPECIAL DRAWING RIGHTS

Before the Court is Plaintiffs Jacob Aikpitanhi and Vero Aikpitanhi's ("Plaintiffs") November 13, 2007 Amended Motion for Special Drawing Rights. (Dkt. No. 9). Defendant Iberia Airlines of Spain ("Defendant") filed its Response on December 13, 2007.[1] Also before the Court is Defendant's November 27, 2007 Motion to Dismiss First Amended Complaint. (Dkt. No. 11). Plaintiffs filed their Response on January 4, 2008. A motion hearing was held on February 21, 2007. For the following reasons, the Court GRANTS Defendant's Motion to Dismiss, and DENIES AS MOOT Plaintiffs' Motion for Special Drawing Rights.

## I.      BACKGROUND

This case arises from allegations surrounding Osamuyia Aikpitanhi's ("Decedent") death aboard Defendant's flight between Madrid, Spain and Lagos, Nigeria on June 9, 2007. (Am. Compl. ¶ 2).

---

[1] The Court notes that Defendant claims it is incorrectly identified in this suit as "Iberia Airlines of Spain," while its legal name is Iberia Lineas Aereas de Espana, S.A. (Def. Br. at 1). Plaintiffs dispute this fact.

Plaintiffs are the parents of the Decedent and are citizens and residents of Nigeria. (*Id*. ¶ 24).

Defendant is a Spanish corporation and its principal place of business is in Madrid, Spain. (*Id*. ¶ 25). Defendant is also a registered in Florida as a "Foreign Profit Corporation." (*Id*.).

Plaintiffs allege the Decedent was being deported from Spain back to Nigeria by the Spanish Immigration authorities when he died aboard Defendant's aircraft. (*Id*. ¶ 1).

Plaintiffs assert Spanish law enforcement agents facilitated Decedent's death by giving him tranquilizers, handcuffing him, and chaining him to his seat, having gagged him with industrial strength rubber before he was placing him on the flight. (*Id*. ¶ 3). Plaintiffs further contend the law enforcement officials took turns beating him. (*Id*.). Plaintiffs claim that Defendant acted in concert with the law enforcement officials in covering the Decedent with a sack so other passengers on the flight could not see the manner in which he was restrained. (*Id*. ¶ 5).

On June 9, 2007, shortly after takeoff, Decedent died of suffocation. (*Id*. ¶ 7).

On October 23, 2007, Plaintiffs filed an Amended Complaint alleging: Count I: Torture; Count II: Cruel, Inhuman, and Degrading Treatment; Count III: False Imprisonment; Count IV: Assault and Battery; Count V: Negligent Infliction of Emotional Distress; Count VI: Intentional Infliction of Emotional Distress; Count VII: Negligence, and Count VIII: Gross Negligence.

## II. ANALYSIS

### A. Legal Standards

Defendant pursues its motion under Fed. R. Civ. P. 12(h)(3), which states, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." However, the Court finds the proper basis for this Motion to Dismiss based on lack of subject matter jurisdiction is Fed. R. Civ. P. 12(b)(1). "The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), may be raised at

any stage in the litigation, even after trial and the entry of judgment, Rule 12(h)(3)." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 505 (2006) (internal citations omitted). The Sixth Circuit has recognized that a court may consider subject-matter jurisdiction *sua sponte* Rule 12(h)(3), *Franzel v. Kerr Mgf. Co.*, 959 F.3d 628, 630 n.1 (6th Cir. 1992), or a challenge to subject-matter jurisdiction may be raised by a party in a motion pursuant to 12(b)(1).

In the present case, as Defendant has properly raised the issue of subject-matter jurisdiction in a Motion to Dismiss, the Court finds the Motion should be properly reviewed under Rule 12(b)(1).[2]

When evaluating a motion to dismiss pursuant to Rule 12(b)(1), the United States Court of Appeals for the Sixth Circuit has instructed:

> When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. However, where a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true.

*Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (internal citations omitted).

### B. The Montreal Convention

Defendant contends that Article 33 of the Montreal Convention bars the instant action in this Court.[3] *See* Convention for the Unification of Certain Rules for International Carriage by Air, May

---

[2] The Court also recognizes that Plaintiffs' Response treats Defendant's Motion to Dismiss as a Motion pursuant to Rule 12(b)(1).

[3] The Montreal Convention has superceded the international air carriage treaty commonly known as the Warsaw Convention. *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (entered into force in the United States in 1934) ("Warsaw Convention"), *reprinted in*

3

28, 1999 (entered into force on Nov. 4, 2003) ("Montreal Convention"), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000). Plaintiffs contend that the intentional torts alleged in their Amended Complaint are outside the scope of the Montreal Convention and subject matter jurisdiction can be predicated upon the Alien Tort Claim Act ("ATCA"), 28 U.S.C. § 1350.

### 1. Scope

The Montreal Convention applies to "all international carriage by air of persons, baggage, or cargo, whether for reward or performed gratuitously by an 'air transport undertaking.'" Art. 1(1). International carriage is defined in the Montreal Convention as "that which originates in the territory of one of the States Party to the Convention and terminates in that of another. . . ." Art. 1(2). The Supreme Court has recognized that, "a treaty ratified by the United States is not only the law of this land, *see* U.S. Const., Art. II, § 2, but also an agreement among sovereign powers." *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 167 (1999) (citations omitted).

It is undisputed that the Decedent began his flight in Spain and was destined for Nigeria, and that both of these countries are signatories to the Montreal Convention. (*See* Def. Br. Ex. 2, List of Signatories to Convention). Further, Plaintiffs admit that the Montreal Convention applies to their action. Plaintiffs are currently seeking Special Drawing Rights pursuant to the Montreal Convention, and contend that "Defendant is strictly liable under the Convention regardless of Defendant's fault" and "[t]hat Decedent's death falls within the judicial interpretation and analysis of the scope of Article 17 of the [Montreal] Convention." (Plf. Br. at ¶¶ 18, 20).

In light of these facts, the Court finds Plaintiffs' claims fall within the scope of the Montreal

---

49 U.S.C. § 40105.

Convention.[4]

### 2. Jurisdiction

The Montreal Convention sets forth its jurisdictional requirements in Article 33, stating in relevant part:

> 1. An action for damages must be brought, at the option of the plaintiff, in the territory of one of the State Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.
>
> 2. In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement.

Therefore, pursuant to the Montreal Convention there are five different forums in which Plaintiffs could bring their claims against Defendant for the death of the Decedent: (1) in the territory of the State Parties; (2) the domicile or principal place of business of Defendant; (3) the place where the ticket was bought; (4) the place of destination; or (5) the principal and permanent place of residence of the Decedent.[5]

---

[4] Further, the Sixth Circuit has held that the Warsaw Convention "provides a cause of action for injuries and deaths occurring on international commercial flights. . . ." *Bickel v. Korean Air Lines Co., Ltd.*, 83 F.3d 127 (6th Cir. 1996), *vacated in part on separate issue*, 96 F.3d 151 (6th Cir. 1996); *see In re: Air Crash at Lexington, Kentucky*, 501 F. Supp. 2d 902, 910 (E.D. Ky. 2007) (noting same).

[5] Plaintiffs mistakenly state in their response that Article 33(1) allows a suit to be brought against a carrier in the country: "(1) of its incorporation, (2) its principal place of business; (3) where the ticket was purchased, and (4) of the destination of the passenger." (Plfs.

5

In the instant case, it is undisputed the contract was formed in Spain and the flight was destined for Nigeria. The Decedent and the Plaintiffs are permanent residents and citizens of Nigeria. The State Parties involved are Spain and Nigeria. Finally, Defendant's principal place of business is Madrid, Spain. (Def. Br. Ex. 1, Jimenez Decl. ¶ 1).

Plaintiffs argue that this Court enjoys proper subject matter jurisdiction because Defendant was "incorporated" in Florida in 1966 as a "Foreign Profit Company." (Plfs. Br. Ex. A). Plaintiffs contend the fact Defendant is incorporated in Florida evidences that Defendant's is domiciled in the United States. Defendant argues that it is a Spanish company, organized and existing under the laws of Spain, and as a result, Spain should be considered its domicile under the Montreal Convention. (Jimenez Decl. ¶ 1).

Given its recent enactment, there is a dearth of law regarding the interpretation of the Montreal Convention. Therefore, the Court looks to case law examining the nearly exact provision of the Warsaw Convention and relies upon cases which have examined the question of what constitutes the "domicile" of a carrier under the Warsaw Convention.[6]

---

Br. at 18). However, Plaintiffs misstate Article 33(1), in which the term "incorporation" is never used. *See* Montreal Convention, Art. 33(1), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (using the term "domicile").

[6] The Warsaw Convention set forth its jurisdictional requirement in Article 28(1):

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

The Montreal Convention has the equivalent jurisdiction requirements set forth in Article 33(1), however, a second provision was also added which allows a fifth possible forum: the principal

Both the Second Circuit and the Fifth Circuit have found that pursuant to the Warsaw Convention "there can be only one principal place of business for an air carrier and this is normally where the air carrier is incorporated." *Swaminathan v. Swiss Air Trans. Co., Ltd.*, 962 F.2d 387, 390 (5th Cir. 1992); *Smith v. Canadian Pacific Airways*, 452 F.2d 798, 800 (2d Cir. 1971); *In re Air Disaster Near Cove Neck, New York*, 774 F. Supp. 718, 720 (E.D.N.Y. 1991). In the instant case, it is undisputed that the Defendant's principal place of business is Spain. The United States Court of Appeals for the District of Columbia has also recognized that "[s]cholars of comparative law have observed that domicile generally refers to a corporation's headquarters." *Wyler v. Korean Air Lines Co.*, 928 F.2d 1167, 1175 (D.C. App. 1991). Again, it is undisputed that Defendant is headquartered in Spain.

Plaintiffs rely solely upon the fact that Defendant is incorporated in Florida to argue that Defendant is domiciled in the United States. However, Plaintiffs have failed to submit any other case in which a court has predicated subject matter jurisdiction under the Montreal Convention based upon a company's incorporation in one state of the United States. Indeed, it appears Plaintiffs' understanding of domicile under the international treaty is inappropriately borrowed from

---

and permanent residence of the passenger. *See* Art. 33(2). As the Montreal Convention did not substantively alter the previous provision besides the addition of this provision, it is appropriate for this Court to rely upon case law which interpreted the Warsaw Convention's equivalent jurisdiction provision, Article 28(1). *See Baah v. Virgin Atlantic Airways Ltd.*, 473 F. Supp. 2d 591, 596 (S.D.N.Y. 2007) (relying upon "cases interpreting a provision of the Warsaw Convention where the equivalent provision in the Montreal Convention was substantively the same," and holding that a "new interpretation" of Article 33(1) is "required for the sake of consistency with the 'newly aligned purpose' of the Montreal Convention."); *Byrd v. Comair, Inc*., 501 F. Supp. 2d 902, (E.D.K.Y 2007); *see also* Article-by-Article Analysis of the Convention, 1999 WL 33292734, Article 17 comment: "It is expected that this provision will be construed consistently with the precedent developed under the Warsaw Convention and its related instruments."

the American theory of "incorporation" as it relates to diversity jurisdiction jurisprudence. In the case, *In re Air Disaster Near Cove Neck, New York*, the district court examined the question of "domicile" as used in Article 28(1) of the Warsaw Convention and observed:

> In contrast to domestic American principles of jurisdiction, the terms of the Warsaw Convention indicate that the drafters of the treaty did not see the concept of corporate domicile, or *domicile* as it is rendered in the original French, as so expansive. Rather, they saw a corporation's *domicile* as unitary and did not contemplate that a corporation might be simultaneously domiciled in two separate countries.

774 F. Supp. at 721 (emphasis in original).

In the present action, Defendant is organized under the laws of Spain, headquartered in Spain, and the majority of its workforce is in Spain. (Jimenez Decl. ¶ 1). Defendant also notes that two other courts in unrelated proceedings held that its principal place of business and domicile are Spain. *See Nebco Int'l, Inc. v. Iberia Airlines of Spain*, 22 Av. Cas. 18,341 (S.D.N.Y 1990); *Iberia Air Lines of Spain v. Nationwide Leisure Corp.*, 408 F. Supp. 221 (E.D.N.Y. 1976). In *Singh v. Tarom Romanian Air Trans.*, 88 F. Supp. 2d 62 (E.D.N.Y. 2000), the court held that an air carrier was domiciled in Romania where it was "organized under the laws of the Republic of Romania." *Id.* at 65; *see also Stanford v. Kuwait*, 648 F. Supp. 657, 661 (S.D.N.Y. 1986) (holding that the carrier was domiciled in Kuwait pursuant to Article 28(1) where it was a "wholly state-owned enterprise, organized and operating under the laws of Kuwait."). In the present action, Defendant is organized and operating under the law of Spain.

In *In re Air Disaster Near Cove Neck, New York*, the district court examined in detail the meaning of "domicile" under the Warsaw Convention. *Id.*, 774 F. Supp. at 720-24. The plaintiff argued that the South American carrier, Avianca, S.A., had acquired a second domicile in the United

States by maintaining a wholly-owned subsidiary, incorporated under the laws of New York over which it had control. *Id*. at 720. The plaintiff contended that the control over the subsidiary was so great "that the two corporations may be considered *alter egos* of one another and the American domicile of the subsidiary imputed to the South American parent, thus conferring jurisdiction . . . ." *Id*. In its analysis, the district court looked to the French definitions and meaning of the word as well as to the structure of the treaty. *Id*. at 721-724. The district court concluded that given its general structure, the drafters of the Warsaw Convention did not intend to authorize jurisdiction in two or more places simultaneously under the domicile provision. *Id*. at 723. Further, the district court stated:

> In this case, the United States is not the carrier's principal place of business and plaintiff's contract of carriage was not concluded through any place of business of Avianca, S.A. in this country. Rather, as the facts presented by the plaintiff establish, the United States is merely a county in which Avianca, S.A. maintains a subsidiary sales agent. That agent, the evidence showed, operates in much the same way as unincorporated divisions of Avianca, S.A. in other countries. *It is, in essence, an incorporated place of business of Avianca, S.A. Plaintiff offers no explanation of why local incorporation should transform an ordinary place of business into a locus of jurisdiction under the terms of the Warsaw Convention.* Certainly, the text nor the legislative history of the convention give no indication that the fact of incorporation ought to effect the suitability of jurisdiction. In fact, neither the text or the Minutes of the Conference mention incorporation at all.

*Id*. at 724 (emphasis added); *see also Pflug v. Egyptair Corp*., 788 F. Supp. 689, 699-700 (E.D.N.Y 1991), (dismissing plaintiff's action under the Warsaw Convention against a wholly-owned subsidiary of Egyptair which was incorporated in New York, where the carrier was not the subsidiary and a carrier can only have one domicile under the Convention). As in *In re Air Disaster Near Cove Neck, New York,* Plaintiffs have failed to make any argument as to why a local incorporation should "transform" an ordinary place of business into an appropriate jurisdictional

9

basis under the Montreal Convention. Plaintiffs merely rest upon the fact that Defendant is incorporated in Florida for the proposition that Defendant's domicile is in the United States.

Further, to adopt Plaintiffs' argument, that Defendant's incorporation in Florida renders the United States Defendant's domicile, would render the other jurisdiction provisions in Article 33 redundant. In *Wyler*, United States Court of Appeals for the District of Columbia rejected the argument that "'domicile' also means any place where the carrier conducts substantial business activities" and give rise to a carrier having two or more domiciles, holding:

> to do otherwise would effectively render other parts of Article 28(1) redundant; if domicile means any place of substantial business, there would be no need to separately allow suit at the carrier's principal place of business or . . . . places where a ticket was purchased.

928 F.2d at 1175.

Therefore, the Court rejects Plaintiffs' unsupported argument that Defendant's local incorporation in Florida creates a valid jurisdictional basis under the domicile provision of Article 33 of the Montreal Convention for this action. Incorporation as it is understood in American jurisdiction jurisprudence is inapplicable in this context. Further, Plaintiffs have supplied no authority to support their interpretation of the jurisdictional requirement. It is Plaintiffs' burden to prove subject matter jurisdiction to the Court, and Plaintiff has not carried that burden here.

The Court holds that because Defendant is organized and exists under the laws of Spain, Defendant's domicile is Spain. As a result, Plaintiffs have failed to bring their action in one of the four proper fora pursuant to the Article 33 of the Montreal Convention.

### 3. Exclusivity

Plaintiffs argue that regardless of whether the Court has jurisdiction over the action pursuant to the Montreal Convention, the treaty is not the exclusive cause of action for their injury, and therefore, proper subject matter jurisdiction may be found under the ATCA.[7]

Plaintiffs' argument is without merit for the reason that it ignores the relevant Supreme Court precedent. In *Tseng*, a passenger brought an action against an air carrier for "psychic or psychosomatic injuries" sustained when she was subjected to an intrusive security search at a United States airport before boarding a flight to Tel Aviv, Israel. 525 U.S. at 160. Both parties agreed that the injuries suffered did not come within the meaning of "accident" in the Warsaw Convention, nor did the injuries constitute "bodily injury" as used in the treaty. *Id*. Therefore, the Supreme Court was confronted with the discrete issue of "the [Warsaw] Convention's exclusivity: When the Convention allows no recovery for the episode-in-suit, does it correspondingly preclude the passenger from maintaining an action for damages under another source of law, in this case, New York tort law?" *Id*.

In *Tseng*, the plaintiff maintained that if the treaty were to be construed to bar her claims under local law, the air carriers would escape liability for intentional torts. *Id*. at 172. However, the Supreme Court went on to hold that this result is avoided because an air carrier "is indisputably subject to liability under local law for injuries arising outside [the scope of the treaty]: *e.g.*, for passenger injuries occurring before 'any of the operations of embarking or disembarking.'" *Id*. at 172 (internal citations omitted). In concluding the Warsaw Convention was the plaintiff's exclusive remedy, the Supreme Court recognized that the Montreal Convention settled the issue prospectively,

---

[7] The Court notes that although Plaintiffs argue that the Montreal Convention is not the source for subject matter jurisdiction for this action, Plaintiffs include the Montreal Convention as a basis for jurisdiction in their Amended Complaint. (Am. Compl. ¶ 19).

11

stating,

> the [Montreal Convention], to which the United States has now proscribed, clarifies, but does not change the [Warsaw] Convention's exclusivity domain. We therefore hold, that recovery for a personal injury suffered "on board [an] aircraft or in the course of any of the operations of embarking or disembarking," Art. 17, 49 Stat. 3018, if not allowed under the Convention, is not available at all.

*Id*. at 161.[8]

Plaintiffs maintain that federal district courts have found this conclusion is "untenable" and cite a multitude of decisions which support this claim. (Plfs. Br. 17). However, all of Plaintiffs' cited case law predates the *Tseng* opinion, and merely illustrates the split of authority regarding the exclusivity issue *before* the Supreme Court resolved the question. *See Tseng*, 255 U.S. at 161 n.3 (collecting cases illustrating split in the Circuits).

Therefore, the Supreme Court has stated that the Montreal Convention, and its predecessor the Warsaw Convention, affords the exclusive remedy for any personal injury suffered on board an international flight or during any operations of embarking or disembarking. In the present action, Plaintiffs allege the Decedent died as a passenger on board an international flight. Pursuant to *Tseng*, Plaintiffs' exclusive remedy lies under the Montreal Convention. As a result, Plaintiffs' arguments that a separate cause of action exists such that subject matter may be independently found are without merit.

### 4. Dismissal

Where a federal court determines that the United States is not a proper forum under Article 28 of the Warsaw Convention, the predecessor to Article 33 of the Montreal Convention, the action

---

[8] Article 29 of the Montreal Convention sets forth the scope of the treaty: "In the carriage of passengers, baggage and cargo, any action for damages, *however founded*, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . ." (emphasis added).

must be dismissed for lack of subject matter jurisdiction. *See Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818-19 (9th Cir. 1995); *Swaminathan*, 962 F.2d at 389; *Wyler*, 928 F.2d at 1175; *Smith*, 452 F.2d at 802. For this reason, the Court holds that where Plaintiffs' action arises exclusively under the Montreal Convention and the United States is not the proper forum pursuant to the treaty, the action must be dismissed. In light of this holding, the Court also dismisses Plaintiff's Motion for Special Drawing Rights as moot.

## III. CONCLUSION

For all these reasons, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 11) and **DENIES AS MOOT** Plaintiffs' Motion for Special Drawing Rights (Dkt. No. 8).

**SO ORDERED**.

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: March 31, 2008

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 31, 2008.

s/Denise Goodine  
Case Manager